USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/1/13

RECEIVED
APR 30 2013
CHAMBERS OF
RICHARD M. BERMAN
U.S.D.J.

# BINGHAM

RAJ MADAN
Direct Phone: 202.373.6681
Direct Fax:    202.373.6381
raj.madan@bingham.com

April 30, 2013

**By Hand**
The Honorable Richard M. Berman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

*Clerk to docket.*

SO ORDERED:

*RMB*
-----------------
RICHARD M. BERMAN U.S.D.J.

*5/1/13*

Re: *Lehman Brothers Holdings Inc. v. United States,*
   No. 10-cv-6200 (S.D.N.Y.)

Dear Judge Berman:

      We write on behalf of Lehman Brothers Holdings Inc. ("Plaintiff") to respond to the Government's letter dated April 25, 2013 ("April 25 Letter"), which provides arguments in opposition to Plaintiff's request that the Court preclude the Government from advancing a new argument based on Section 231AA of the U.K. Finance Act of 1988 ("Section 231AA"). Plaintiff-Intervenor Official Committee of Unsecured Creditors joins in this letter. Plaintiff requests that the Court consider the following substantive points responding directly to those made by the Government: (1) Federal Rule of Civil Procedure ("Rule") 44.1 does not cure the Government's deficient discovery responses; (2) the Government's contention interrogatory responses did not put Plaintiff on notice of its Section 231AA argument; and (3) under the law of this district, prejudice is presumed in the case of deficient contention interrogatory responses.

      First and foremost, the Government mistakenly argues that Rule 44.1 absolves it of its failure to timely raise a completely new treaty argument based on Section 231AA. Rule 44.1 cannot and does not trump the Government's obligation to respond accurately and timely to Plaintiff's contention interrogatories issued pursuant to Rule 33 on February 21, 2012, nor can it cure the Government's deficient responses. *See Silberman v. Innovation Luggage, Inc.*, No. 01-7109, 2002 WL 31175226 at *2 & n.1 (S.D.N.Y. Sep. 20, 2002) (finding no "rationale for why Rule 44.1, which is not a discovery rule, should preempt Rule 26").

      Plaintiff's contention interrogatories seeking to discover the provisions of "foreign law on which Defendant relies" imposed an obligation on the Government to investigate and determine whether it intended to rely on U.K. law to support any of its legal arguments. The timing of such obligation was March 2012 (when the Government's responses were due) or reasonably soon thereafter.

Beijing
Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
2020 K Street NW
Washington, DC
20006-1806

T +1.202.373.6000
F +1.202.373.6001
bingham.com

Hon. Richard Berman
April 30, 2013
Page 2

The Government appears to contend that inadequate investigation at the time of its initial responses is excused by disclosing its Section 231AA theory belatedly, even as late as several months after the close of discovery. By failing to include Section 231AA in its responses or its Answer, the Government put Plaintiff on notice that it *would not* be relying on Section 231AA.

The obligations imposed by Rule 33 are not optional. As the following facts objectively demonstrate, had the Government diligently conducted a review of information readily accessible to it, the Government could have timely satisfied its obligations under Rule 33:

- The IRS audited the tax treatment of the stock loan transactions at issue for two years, starting in 2004 and ending in 2006. This audit included a review by several IRS subject matter specialists and culminated in the IRS National Office's issuance and formal publication of its legal position on the issue. The published legal memorandum referenced U.K. anti-tax avoidance law that might cause the taxpayer to lose its entitlement to the tax attribute at issue.[1]

- The Government hired prominent U.K. tax counsel[2] to review the U.K. tax aspects of the transactions at issue in 2009, three years before Plaintiff served contention interrogatories inquiring whether the Government intended to rely on foreign law.

- The Government also corresponded with the U.K. tax authority regarding U.K. legal implications of the transactions at issue in 2009.

- The Government's memorandum in support of its motion for withdrawal of the reference, filed with the Court in August 2010, twice refers to the potential significance of U.K. law to support its motion.

- Finally, the Government's own production of documents to Plaintiff in March 2011 contained a chapter in a leading U.K. tax treatise that included a concise explanation of the operative statute, Section 231AA.

---

[1] CCA 200612013, available at 2006 WL 752330, n.10.

[2] The Government engaged "Queen's Counsel," an honorary royal appointment bestowed upon U.K. barristers who have achieved preeminence in their field.

Hon. Richard Berman
April 30, 2013
Page 3

The Government's letter seems to imply that the Court may disregard deficient interrogatory responses if its notice under Rule 44.1 was reasonable. As indicated above, reasonable notice under Rule 44.1 cannot cure deficient discovery responses. Nonetheless, all of the case development described in the bulleted paragraphs above demonstrates that the Government's notice was wholly unreasonable under Rule 44.1. Rule 44.1 contemplates that a party provide notice "as early as is practicable." *DP Aviation v. Smiths Indus. Aerospace and Defense Sys. Ltd.*, 268 F.3d 829, 847 (9th Cir. 2001). In *DP Aviation*, cited in the Government's own letter, the court found that the notice was *not* reasonable under Rule 44.1 because "[n]o extenuating circumstances were presented by [the offering party] to show that prior notice was impracticable or that the need for notice was not reasonably foreseeable." 268 F.3d at 848-49 & n.21 (noting that "[i]nterests of judicial economy favor early notice" and finding that there was "no reason in law or policy to condone a belated notice of contention of application of foreign law on an issue that reasonably can be anticipated").[3]

Second, the Government's argument that its interrogatory response put Lehman on notice that the Government would rely on Section 231AA is inconsistent with the parties' explicit discussions of, and representations to the Court regarding, the purpose of Plaintiff's contention interrogatories. As the parties jointly represented to Judge Maas in a March 30, 2012, status update, these contention interrogatories were propounded "to gain a better understanding of [the parties'] respective theories and arguments and to assist their experts in addressing the matters that are in dispute." The Government does not deny that Plaintiff specifically explained to Government counsel in numerous phone calls that one of the purposes of the contention interrogatories was to determine whether it would be necessary to submit expert testimony on issues of U.K. law. For the Government to characterize its generic response—which mentioned neither Section 231AA nor any provision of U.K. law but simply stated that it

---

[3] *Northrup Grumman Ship Sys., Inc. v. Ministry of Defense of Republic of Venezuela*, 575 F.3d 491 (5th Cir. 2009), cited by the Government, is both consistent with the foregoing principles and distinguishable from the circumstances in the present case. There, the court based its holding that notice was reasonable partly on the offering party's disclosure, 15 months before its Rule 44.1 notice, "that it intended to pursue discovery" on the specific Venezuelan law at issue. *Id.* at 497 & n.7 (also finding no showing of prejudice on this basis).

Hon. Richard Berman
April 30, 2013
Page 4

should prevail "as a matter of law" under the treaty—as putting Lehman on notice that the Government would rely on Section 231AA is absurd.

Indeed, similarly cryptic references have been held insufficient substitutes for adequate notice in discovery. In precluding the Government from offering a causation defense that it failed to identify in response to contention interrogatories, the Court of Federal Claims dismissed the Government's attempt to characterize a short reference to its theory in a legal brief as providing sufficient notice:

> [T]his sentence stood alone in the brief and was not amplified upon . . . to indicate that it involved a causation defense. Nor did defendant cite any cases in support of this lone sentence so as potentially to give further clues as to its intent. In the court's view, this single sentence thus does not excuse or negate defendant's failure to comply with this court's discovery rules when it was confronted with specific interrogatories regarding the nature of its defenses.

*See Spectrum Sciences & Software, Inc. v. United States*, 98 Fed. Cl. 8, 27 (2011). The Government did not provide even a "lone sentence" suggesting it intended to raise Section 231AA.

Similarly, the defendant in *Astrazeneca v. Mutual Pharmaceutical* failed to assert a theory of patent invalidation until summary judgment briefings. 278 F. Supp. 2d 491, 503 (E.D. Pa. 2003), *aff'd*, 384 F.3d 1333 (Fed. Cir. 2004). Plaintiff attempted to make excuses for its failure to disclose this theory in its responses to contention interrogatories, stating that "there are only so many rocks that one can . . . turn over in litigation and that rock was not a rock that was uncovered until much, much later." *Id.* The Eastern District of Pennsylvania found the defendant's explanation unpersuasive and limited the defendant to the theories it included in its interrogatory responses. The court noted that it may be more tolerant of such oversights with individual plaintiffs but not in cases "involving two large business entities, with expertise in their respective fields, and with highly competent counsel representing them." *Id.* at 508-09. The Government's excuses for its delayed assertion of Section 231AA in this case are similarly unavailing.

How could Lehman have been put on notice of the Government's Section 231AA argument when the Government argued to Judge Maas that it had only "recently learned" of that provision? The Government's lack of diligence in developing the Section 231AA argument cannot be excused merely because its

Hon. Richard Berman
April 30, 2013
Page 5

responses to contention interrogatories used language so vague, overbroad, and ambiguous as to pull within their scope virtually *any* subsequently developed argument. If Rule 33 permitted the Government's approach, parties would be incented to obfuscate. Instead, Rule 33 encourages disclosure that will enable the requesting party to develop its case efficiently by requiring specificity, particularity, and diligent investigation. *See Wechsler v. Hunt Health Sys.*, No. 94-8294, 1999 WL 672902, at *2 (S.D.N.Y. Aug. 27, 1999) ("Toward that end, the answering party is usually afforded ample opportunity to reflect on the question, to consult all pertinent sources of information bearing on it, and to seek the advice and assistance of counsel in order to craft answers that provide a full and accurate disclosure.").

The need for meaningful disclosure regarding the government's legal contentions is more acute in this case, where the arguments that the Government has chosen to advance have shifted considerably over time.[4] These objectives are more applicable here because the Government is the party in control of identifying the challenges it chooses to advance against Lehman's tax reporting position. Considering that the Government had spent eight years to develop its legal and factual position beginning with the IRS audit in 2004, it was reasonable for Lehman to expect that it could rely on the representations made by the Government in its contention interrogatory responses in 2012.

Finally, courts in this district presume that unfair prejudice will result to a propounding party if the opposing party changes its position after the deadline for responding to contention interrogatories has passed. *See Wechsler*, 1999 WL 672902, at *3 ("[P]roof of unfair prejudice . . . is not a prerequisite to preclusion" because "[t]he estoppel principles applied in this Circuit to contention interrogatory responses implicitly presume unfair prejudice will result if the responding party subsequently alters his position."). Nonetheless, Plaintiff in fact will suffer substantial explicit prejudice if the Government is permitted to disregard the Federal Rules with impunity. Because the government is attempting belatedly to argue that Section 231AA has relevance to the operation of the Treaty, Plaintiff's case development efforts have been hamstrung. Had Plaintiff known prior to the close of discovery that the Government intended to raise this argument, Plaintiff would have developed the issue extensively, including

---

[4] Indeed, during the course of the last nine years of audit and litigation, the Government has dropped one argument (substantiation, raised at audit and dropped in litigation) and raised a new one (economic substance, raised for the first time during the litigation).

Hon. Richard Berman
April 30, 2013
Page 6

propounding discovery on the U.K. tax authority[5] and LBIE (a former Lehman U.K. broker-dealer currently under separate bankruptcy administration) and engaging experts in U.K. tax law and administrative practices and treaty negotiating policy, at a minimum. Indeed, the purpose of contention interrogatories is precisely to permit both sides to engage in appropriate development of the issues. *See Wechsler*, 1999 WL 672902 at *1 ("Contention interrogatories . . . are one of many discovery tools designed to assist parties in narrowing and clarifying the disputed issues and reducing the possibility of surprise at trial."). The Court should preclude the Government's reliance on this new theory to prevent the gross unfairness that would result.[6]

Respectfully,

*Raj Madan*/HEB

Raj Madan

cc (via email):   Jean-David Barnea, Counsel for the United States
James Nicholas Boeving, Counsel for the United States
Stacey J. Rappaport, Counsel for the Committee

---

[5] For example, as discussed at the hearing, the Government engaged in discovery of the U.K. tax authority, HMRC, after the close of discovery and now seeks to offer in evidence a redacted HMRC letter received in response. Had Plaintiff obtained access to this letter while discovery was still open, Plaintiff would have sought similar written discovery at a minimum and most likely would have sought to depose the author of the HMRC letter. The Government should not be permitted to pursue an end-run around the discovery deadline by using its powers to request post-discovery information from a foreign government and offering that information into evidence.

[6] The prejudice to Lehman further demonstrates the unreasonableness of the Government's Rule 44.1 disclosure. *See DP Aviation*, 268 F.3d at 849 ("We cannot say with confidence that [the plaintiff] was not prejudiced by the late timing of the [Rule 44.1] notice.").